UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| MICHAEL N. NEWSOM, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No. 1:09-cv-1252-JMS-DML |
| | ) |
| WENDY KNIGHT, et al., | ) |
| | ) |
| Defendants. | ) |

**Entry Discussing Motion for Summary Judgment**

Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government." *Turner v. Safley,* 482 U.S. 78, 84-85 (1987). Nonetheless, "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Id.* at 84. In the midst of a complex and tumultuous environment such as a prison, "[f]ederal courts must take cognizance of the valid constitutional claims of prison inmates." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996)(quoting *Turner,* 482 U.S. at 84). This case poses the question whether there are disputed questions of fact which could support a finding that prison officials have overstepped the limits of their considerable discretion.

Michael Newsom, formerly a prisoner at the Plainfield Correctional Facility ("Plainfield"), brings this lawsuit pursuant to 42 U.S.C. § 1983 alleging that the defendants, officials at Plainfield, violated his First Amendment rights by enforcing a policy that prohibited him from possessing hardcover books and when they prohibited from receiving a "Slingshot" newspaper. The defendants seek resolution of Newsom's claims through the entry of summary judgment. Newsom has responded to the defendants' motion and the defendants have replied.

**Summary Judgment Standard**

A motion for summary judgment must be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting **FED.R.CIV.P.** 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no

reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248).

If the moving party successfully carries its burden, the non-moving party must "go beyond the pleadings" and present specific facts which show that a genuine issue of material fact exists. *Id.* at 324. This may be done through the designation of specific facts in affidavits, depositions, answers to interrogatories or admissions. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992). If the non-moving party fails to make a sufficient showing on an essential element of its case on which that party will bear the burden of proof at trial, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986).

**Facts**

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Newsom as the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

*Prohibition of Hardcover Books*

At Plainfield, hardcover books are considered a threat to the safety and security of the facility because they may be used to smuggle contraband or are used as weapons. Hardcover books are therefore prohibited as personal property. Hardcover books are permitted to be checked out from the library and offenders may possess softcover books.

Defendant Wendy Knight is, and was at all times relevant to the complaint, the Superintendent of Plainfield. Her job duties include managerial oversight of the facility. Knight does not make specific decisions regarding what items an offender may or may not possess and does not personally monitor incoming mail. Those duties are delegated to other staff members. Newsom states that he sent a Request for Interview to Knight requesting to be allowed to order and receive hardcover books, including *Harry Potter and the Deathly Hallows.* This request was returned with the response "request denied" and was signed "Ms. Knight."

Defendant Craig Grage is, and was at all times relevant to the complaint, an Assistant Superintendent at Plainfield. Grage assists with managerial oversight of the facility, and at times responds to correspondence sent to the Superintendent's office. Grage does not make specific decisions regarding what items and materials in possession of offenders may constitute a safety and security risk and does not monitor offenders' incoming mail. According to Newsom, Grage responded to a request for interview asking that the policy banning hardcover books be changed stating "Not at this time. Most books can be ordered in paperback."

*Confiscation of Slingshot Newspaper*

Plainfield prohibits material regarding security threat groups or other subversive material. Examples include materials that contain gang signs, encourage militant behavior, or provide other information that could be dangerous to the security of the institution by inciting violent, hateful, disruptive or chaotic behavior.

Defendant James Ray was, at all times relevant to the complaint, a Correctional Officer assigned to the mailroom at Plainfield. Ray processes incoming mail addressed to offenders at the facility and opens and screens packages and mail for improper material. When Ray found any material that could be considered subversive or a security risk to the facility, he would call the information to the attention of his supervisor. The mailroom supervisor would then conduct an investigation and determine whether the document or item was a security issue. Ray did not have authority to make a decision to withhold a document or item. Ray followed the instructions of his supervisor.

The practice of mailroom workers at Plainfield when a prohibited item is confiscated is to inform the offender to whom the mail is addressed that the item has been withheld, that he has the choice to destroy the item or mail it to someone outside the facility, and that he may file a grievance before the item is disposed. It is the practice of personnel who work in the mailroom to retain these items temporarily in a locked container to allow the offender to file a grievance before the issue of the item's disposition is resolved. If an offender's grievance is denied or he does not grieve all the way through the grievance process, a member of the staff in the mailroom typically is informed of this fact by the facility's Administrative Assistant. If he received notice that an offender's grievance has been denied or that he did not complete the grievance process, Ray's practice was to invite the offender to the mailroom so that he may decide whether to mail the item to an individual outside the facility or to allow the item to be destroyed. Whenever an item in the incoming mail is withheld, a record of that fact is routinely generated by means of a form entitled Notice and Report of Action Taken on Correspondence. This form is used to document items withheld and their ultimate disposition. Ray signed a form indicating that the *Slighshot* paper had been withheld and destroyed.

Kevin Mulroony is the facility Administrative Assistant, and the person responsible for investigating grievances. When Newsom filed a grievance regarding the confiscation of the *Slingshot* newspaper, Mulroony reviewed the newspaper. Mulroony determined that the newspaper contained multiple images associated with security threat groups as well as hand signs. Due to the facility's policy of zero tolerance on any item that is a threat to safety and security of the facility, Newsom was not permitted to possess the newspaper. During his review, Mulroony located several anarchy symbols, which encourage disruptive behavior through the anarchist's commitment to a lack of governance. According to Mulroony, this is in direct conflict with the mission of the prison to maintain safety and security. In addition, the newspaper contained a hand signal, consisting of an individual with his middle finger pointed straight up in the air, with all other fingers closed into a fist. The newspaper also contained a specific type of styled block lettering, which based on Mulroony's experience and knowledge, can be used by offenders as a stencil for tattoo

making, in violation of prison rules. Additionally, the newspaper depicted group demonstration, individuals with weapons, and encouraged the reader to "resist" and "abolish prison." Mulroony concluded that this type of inflammatory language and imagery could lead to a breakdown in order and authority within the facility.

Plainfield has a policy that allows an offender to remove pages from a newspaper or magazine, which contain prohibited material, but only if there are less than two pages of prohibited material. However, items that contain more than two pages of objectionable material are not permitted. The *Slingshot* magazine sent to Newsom contained at least four pages of objectionable material and therefore was prohibited.

## Discussion

In his complaint, Newsom challenges the disposal of a science fiction book in 2006, the policy of prohibiting hardcover books, including a hardcover copy of *Harry Potter and the Deathly Hallows*, and the withholding and destruction of the *Slingshot* newspaper.

*2006 Disposal of Science Fiction Book*

Newsom claims that he was forced to dispose of a "science fiction book" in August of 2006. The defendants move for summary judgment on this claim based on the expiration of the statute of limitations. In response, Newsom states that his allegation regarding the disposal of the science fiction book was not meant to be a claim at all. Accordingly, to the extent that Newsom's complaint could have been read to present a claim based on the disposal of the science fiction book, that claim is now dismissed.

*Hardcover books*

Newsom's next claim is that Plainfield officials enforced an unconstitutional policy that prohibits him form receiving hardcover books and specifically prohibited him from possessing a hardcopy version of *Harry Potter and the Deathly Hallows*.

As an initial matter, defendant Ray argues that he was not personally involved in enforcing the policy prohibiting hardcover books or in the decision to prohibit Newsom's requested book and therefore cannot be held liable on this claim. To be held liable under 42 U.S.C. § 1983, a defendant must be personally responsible for the constitutional violation, meaning that they facilitated, approved, condoned, or ignored the violation. *Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009); *Grieveson v. Anderson*, 538 F.3d 763, 775-76 (7th Cir. 2008); *Johnson v. Snyder*, 444 F.3d 579, 583-84 (7th Cir. 2006). "Section 1983 creates a cause of action based upon personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation.*" Sheif-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994), cert. denied, 513 U.S. 1128 (1995). Here, there is no evidence or argument that Ray was involved in the policy of prohibiting hardcover books or in the decision to deny books to Newsom specifically. Accordingly, he is entitled to judgment in his favor on this claim.

The defendants argue that to the extent Newsom challenges the policy of prohibiting all hardcover books, by suing the prison officials, rather than the Department of Correction, he sues the wrong defendant. To the contrary, official-capacity suits against state officials for injunctive relief are permitted by 42 U.S.C. § 1983. *See Power v. Summers*, 226 F.3d 815, 819 (7th Cir. 2000) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n. 10); *Alston v. DeBruyn*, 13 F.3d 1036, 1038 n.1 (7th Cir. 1994). The proper defendants in such a suit are the state officials responsible for seeing that the order is carried out. *See, e.g.*, *Feit v. Ward*, 886 F.2d 848, 858 (7th Cir. 1989) (proper defendants for purposes of injunctive relief were supervisory officials of government agency). Knight, the Superintendent at Plainfield is such an official. While Newsom does not specify that he is suing the defendants in their official capacities, he states their occupation at the prison. This is sufficient to state an official capacity claim. *See Connor v. Reinhard*, 847 F.2d 384, 394 n.8 (7th Cir. 1988) (noting that, in cases of ambiguity, the presumption in civil rights claims is that a public official is named in his official capacity, but that the court should also consider the manner in which the parties treat the suit); *Kolar v. Sangamon County of State of Ill.*, 756 F.2d 564 (7th Cir. 1985) (a suit which lists in the case name of the complaint the official's job title, is considered to be a suit against an individual in his or her official capacity). While Newsom does not request injunctive relief, he does request a declaration that the actions of the defendants violated his rights. This is sufficient to maintain his official capacity claims regarding Plainfield's hardcover book policy.

Prisoners have protected First Amendment interests in both sending and receiving mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citing *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safley*, 482 U.S. 78 (1987)). Prison regulations or practices affecting a prisoner's receipt of non-legal mail implicate First Amendment rights and must be "reasonably related to legitimate penological interests." *Id.* (quoting *Thornburgh*, 490 U.S. at 409). Prison security "is a sufficiently important governmental interest to justify limitations on a prisoner's first amendment rights." *Id.* (quoting *Gaines v. Lane*, 790 F.2d 1299, 1304 (7th Cir. 1986)). Prison officials are given deference in establishing regulations and in determining appropriate restrictions, and a court will not second-guess regulations or practices that serve legitimate penological interests. *Turner*, 482 U.S. at 89. In *Turner v. Safely*, the Supreme Court has delineated four factors for determining whether a specific regulation or practice serves a legitimate penological interest. *Id.* at 89-90. The primary factor is whether a valid, rational connection exists between the restriction and a legitimate interest. *Id.* The other factors relevant in determining a restriction's reasonableness include whether the inmate has alternative means of exercising the right; the impact accommodation of the asserted right would have on guards, other inmates, and prison resources; and the absence of a reasonable alternative to the regulation or practice. *Turner*, 482 U.S. at 90. In determining whether a prison regulation is "'reasonably related to legitimate penological interests,'" a prisoner "must overcome the presumption that the prison officials acted within their 'broad discretion.'" *Shaw v. Murphy*, 532 U.S. 223 (2001). "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 532 U.S. 126, 132 (2003).

Here, the defendants argue that hardcover books are a threat to the safety and security of the facility because they may be used to smuggle contraband or are used as

weapons. But the defendants have not shown that a wholesale prohibition on the receipt or possession of hardcover books, even those sent directly from the publisher, is a reasonable response to these security concerns. The court in *Jackson v. Elrod*, 881 F.2d 441, 445 (7th Cir. 1989) denied qualified immunity to prison officials who banned all hardcover books. The *Jackson* court explained that the defendants were on notice under clearly-established case law that their hard-cover book prohibition was unconstitutional. The court relied in part on *Kincaid v. Rusk*, 670 F.2d 737 (1982),[1] which dealt with restrictions on literature. The *Kincaid* court explained that "maintenance of security and discipline do not justify the wholesale prohibition of . . . hard-bound books." *Kincaid*, 670 F.2d at 744. Similarly, here, the defendants have not shown that the wholesale prohibition of hardcover books is justified and the defendants' motion for summary judgment on Newsom's claim that Plainfield maintains an unconstitutional policy of prohibiting hardcover books must be denied.

Courts will permit a restriction on the possession of a particular hardcover book when alternative means of obtaining the book are available. For example, in *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100 (6th Cir. 1991), the prison refused to allow the plaintiff to receive a hardcover Bible. Affirming the district court's decision granting summary judgement for the prison, the court explained that the prisoner would have been allowed to receive a softcover Bible. Similarly, In *Bell v. Wolfish* 441 U.S. 520 (1979), the Court recognized that the limited restriction against the receipt of hardback books unless mailed directly from publishers, bookstores, or book clubs was a rational response by prison officials as security against smuggling contraband. But the Court noted that there were alternative means of obtaining the restricted reading material, such as a relatively large prison library as well as promptly delivered magazines and soft-bound books. *Id.* at 552. The defendants argue that they are entitled to a similar ruling because *Harry Potter and the Deathly Hallows* is now available in paperback. They also explain that if the library has the book, Newsom can check it out temporarily from the library. But they have not shown when the book became available in paperback or that it was available at the library. They have therefore not provided enough evidence to show that their restriction on Newsom's possession of *Harry Potter and the Deathly Hallows* was reasonable and their motion for summary judgment on this issue is denied.

*Withholding of Slingshot Newspaper*

Newsom's next claim is that Plainfield officials unconstitutionally confiscated his *Slingshot* newspaper.

---

1 *Jackson* and *Kincaid* involved the prohibition of hardcover books to pre-trial detainees, but pretrial detainees and convicted prisoners are entitled to equivalent degrees of first amendment protection and, thus, that the analysis of a prison condition or policy under the first amendment is the same for both categories of inmates. *See Bell v. Wolfish*, 441 U.S. 520, 545, 546 (1979).

Knight and Grage argue that they do not personally monitor incoming mail and therefore cannot be held liable on Newsom's claim regarding the withholding of incoming mail. Newsom has not presented evidence to the contrary and they are therefore entitled to judgment on this claim. *See Knight v. Wiseman*, 590 F.3d 458, 462-63 (7th Cir. 2009).

Applying the *Turner v. Safely* test to Newsom's claim regarding the *Slingshot* newspaper, the court finds that withholding the publication at issue here did not violated Newsom's First Amendment rights. When the paper was withheld, Newsom filed a grievance and Administrative Assistant Kevin Mulroony reviewed the publication. Upon review, he found numerous images associated with security threat groups. According to Mulroony, the newspaper contained anarchy symbols, which encourage disruptive behavior based upon a commitment to a lack of governance. The paper also contained impermissible hand signs which encourage disruption, and messages encouraging the reader to "Resist" and "Abolish Prison." In addition, the newspaper contained imagery depicting group demonstration and weaponry, which prison officials concluded could lead to a breakdown in order and authority within the facility. These factors led to the conclusion that the material was not consistent with good order, would lead to security and safety issues in the facility, and consequently, the newspaper was withheld. This conclusion was reasonable and the defendants' motion for summary judgment on Newsom's claim regarding the *Slingshot* newspaper is granted.

## Conclusion

The defendants' motion for summary judgment regarding the prohibition of hardcover books is **denied**, except that Ray had no personal involvement in that prohibition and his motion for summary judgment on this issue is **granted**. The defendants' motion for summary judgment on Newsom's claim that his *Slingshot* newspaper was wrongfully withheld is **granted**. No partial final judgment shall issue at this time as to the claims resolved in this Entry.

**IT IS SO ORDERED.**

Date: 12/21/2010

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

Michael N. Newsom
DOC #999029
New Castle Correctional Facility
1000 Van Nuys Road
New Castle, IN 47362

Corrine T.W. Gilchrist
corinne.gilchrist@atg.in.gov